UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KEVIN C.R.,[1]

Petitioner,

v.

WARDEN, CALIFORNIA CITY DETENTION CENTER,

Respondent.

No. 1:26-cv-06525-TLN-CKD

A# 216-273-886

**RELEASE ORDER**

This matter is before the Court on Petitioner Kevin C.R.'s ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1). Respondent filed an opposition. (ECF No. 6.) For the reasons set forth below, the habeas petition is GRANTED. Respondent shall IMMEDIATELY RELEASE Petitioner.

///

///

///

///

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. FACTUAL BACKGROUND[2]

This matter arises from Petitioner's allegedly unlawful detention by federal immigration authorities. (ECF No. 1.) Petitioner is a noncitizen who entered the United States on January 1, 2018, without inspection. (*Id.* at 9.) He was detained by U.S. Border Patrol, placed in juvenile detention for approximately three months, and then released on April 7, 2018. (*Id.*) While in the United States, he obtained a U-Visa and applied for asylum, which is currently being processed. (*Id.*) He lived with his fiancé, who has a green card, and on February 6, 2024, they had a son. (*Id.*) To support them, Petitioner worked as a construction worker and Uber Eats delivery person. (*Id.*)

On May 15, 2022, Petitioner was arrested for[3] Inflicting Corporal Injury on a Spouse or Cohabitant in violation of California Penal Code § 273.5(a). (ECF No. 6-5 at 5.) On July 15, 2023, Petitioner was arrested for Assault with a Firearm in violation of California Penal Code § 245(A)(2) and Obstructing a Public Officer in violation of California Penal Code § 148(A)(1). (*Id.* at 7.) On February 8, 2024, Petitioner was convicted of Drawing or Exhibiting a Firearm in the Presence of a Motor Vehicle Occupant in violation of California Penal Code § 417.3. (*Id.* at 6.) On August 5, 2024, Petitioner was arrested for Evading a Peace Officer in violation of California Vehicle Code 2800.2(A) and Hit and Run in violation of California Vehicle Code 20002(A). (*Id.* at 7–8.) On November 12, 2025, Petitioner was arrested for Possession of Burglary Tools in violation of California Penal Code § 466 and Conspiracy in violation of California Penal Code § 182(a)(1). (*Id.* at 9.)

These charges were all dismissed, or the prosecutor declined to press them, aside from the Drawing or Exhibiting a Firearm in the Presence of a Motor Vehicle Occupant, Possession of Burglary Tools, and Conspiracy charges. (*Id.*)

On June 8, 2026, a Border Patrol Agent stopped him while he was driving home from

---

[2] Respondent does not contest these facts. (*See generally* ECF No. 6.)

[3] Petitioner was also arrested for other non-violent offenses since entering the United States, but the additional charges are not material to the analysis regarding application of 8 U.S.C. § 1226(c)(1)(E) conducted below. (ECF No. 6-5.)

work along with multiple passengers. (*Id.*; ECF No. 6-1 at 3.) Petitioner allegedly fled the vehicle, was detained by the Border Patrol Agent, questioned, and driven to a processing station. (ECF No. 6-1 at 3.) Border Patrol transferred him to the custody of U.S. Immigration and Customs Enforcement on June 12, 2026, and he was sent to the California City Detention Facility where he has been detained since. (ECF No. 1 at 9.)

Petitioner has now been detained for over two months. He has not received any hearing as to his custody in that time. (*Id.*) On August 17, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus, challenging the lawfulness of his detention. (*Id.*)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner alleges that his detention violates his rights under the Due Process Clause of the Fifth Amendment.[4] (ECF No. 1 at 6.) Respondent argues that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E) and his detention is constitutional.[5] (ECF No. 6 at 2.)

---

[4] Petitioner also alleges that his detention violates the Eighth Amendment. (ECF No. 1 at 6.) Finding relief warranted under Petitioner's due process claim, the Court declines to address this additional argument in favor of judicial economy.

[5] Respondent also argues that Petitioner should be required to exhaust his administrative

A. Detention Authority

8 U.S.C. § 1226(c) provides for mandatory civil immigration detention if a noncitizen who has entered without inspection or parole "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" 8 U.S.C. § 1226(c)(1)(E)(ii).

Respondent argues that this provision applies because "Petitioner has been arrested for burglary among other charges." (ECF No. 6 at 3.) Respondent misstates the charges against Petitioner. According to the RAP sheet Respondent submitted, Petitioner was arrested for Possession of Burglary Tools in violation of California Penal Code § 466 and Conspiracy in violation of California Penal Code § 182(a)(1). (ECF No. 6-5 at 9.) But he has never been arrested for, charged with, or admitted the essential elements of burglary.

Examination of the plain text of 8 U.S.C. § 1226(c) confirms that an arrest for Possession of Burglary Tools does not subject Petitioner to mandatory detention. The statute specifies that "[f]or purposes of paragraph (1)(E), the terms 'burglary', 'theft', 'larceny', 'shoplifting', 'assault of a law enforcement officer', and 'serious bodily injury' have the meanings given such terms in the jurisdiction in which the acts occurred." 8 U.S.C. § 1226(c)(2). "Burglary" is defined in

---

remedies by requesting a hearing pursuant to *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999). (ECF No. 6 at 2–3.) The Court finds after consideration of the factors articulated in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), that prudential exhaustion is not required. First, an administrative appellate record is not necessary to reach a proper decision on Petitioner's due process claim. Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)). Finally, it is unlikely that the agency would correct its own mistake. *See, e.g.*, *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) ("Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error.") Additionally, because of the significant liberty interest at stake in this case, irreparable injury would result from requiring exhaustion. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Thus, the Court declines to require prudential exhaustion in this case.

California Penal Code § 459 to mean "enter[ing]" a home or other enumerated structure "with intent to commit grand or petit larceny or any felony." Cal. Penal Code § 459. Possession of burglary tools, by contrast, is defined by possession of any one of an enumerated list of objects "with the intent to feloniously break or enter into any building . . . without being requested to do so by a person having the right to open the same" or "mak[ing], alter[ing], or repair[ing] any instrument or thing, knowing or having reason to believe that it is intended to be used in the commission of a misdemeanor or felony." Cal. Penal Code § 466. Possession of burglary tools does not require "entering" an enumerated structure, and thus the essential elements of the former are not encompassed by the elements of the latter. *Cf. Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."). For the same reason, the conspiracy charge also does not subject Petitioner to mandatory detention. *Cf. United States v. Felix*, 503 U.S. 378, 389 (1992) ("[A] substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes.")

Respondent identifies no other specific offenses which allegedly subject Petitioner to mandatory detention under 8 U.S.C. § 1226(c) aside from generally referring to "other charges." (ECF No. 6 at 3.) As a threshold matter, courts in this district have found that 8 U.S.C. § 1226(c)(1)(E) does not have retroactive effect. *Lopez Lopez v. Warden*, No. 1:26-CV-03556-DAD-CKD (HC), 2026 WL 1346694, at *2 (E.D. Cal. May 14, 2026) ("Multiple district courts have determined that § 1226(c)(1)(E) does not apply retroactively to arrests and convictions suffered prior to the passage of the Act.") Thus, arrests and charges which occurred before the passage of the Laken Riley Act into law on January 29, 2025, would not be a basis for invoking the statute. Pub. L. No. 119-1, 139 Stat. 3 (2025).

The other offenses in Petitioner's criminal history are not qualifying offenses regardless. Evading a Peace Officer and Obstructing a Public Officer do not constitute an "assault of a law

enforcement officer offense" under California law. "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240. Neither California Penal Code § 148(A)(1) nor California Vehicle Code 2800.2 require proof that the defendant attempted to violently injure the peace officer, or that he caused serious bodily injury or death to another. Cal. Veh. Code § 2800.2 (prohibiting "flee[ing] or attempt[ing] to elude a pursuing peace officer . . . and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property"); *People v. Quiroga*, 16 Cal. App. 4th 961, 968 (1993) (noting that California Penal Code § 148 does not require "forcible interference" with an officer's duties.).

Neither California Penal Code §§ 245(A)(2), 273, 417.3 nor California Vehicle Code § 20002(A) require proof that the "crime result[ed] in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii); *see People v. Aguilar*, 16 Cal. 4th 1023, 1028 (1997), *superseded by statute on another ground as stated in People v. Perez*, 4 Cal. 5th 1055, 1061, 1068 (2018) ("One may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on *use* of a deadly weapon or instrument or, alternatively, on force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial."); Cal. Veh. Code § 20002 (requiring that "[t]he driver of any vehicle involved in an accident resulting only in damage to any property, including vehicles, shall immediately stop the vehicle at the nearest location that will not impede traffic or otherwise jeopardize the safety of other motorists"); Cal. Penal Code § 417.3 (prohibiting "except in self-defense, in the presence of any other person who is an occupant of a motor vehicle proceeding on a public street or highway, draw[ing] or exhibit[ing] any firearm, whether loaded or unloaded, in a threatening manner against another person in such a way as to cause a reasonable person apprehension or fear of bodily harm").

Finally, California Penal Code § 273.5 applies when "[a] person . . . willfully inflicts corporal injury resulting in a traumatic condition" upon a qualifying victim such as a spouse or fiancé. However, "traumatic condition" is defined as "a condition of the body, such as a wound,

or external or internal injury . . . *whether of a minor or serious nature*, caused by a physical force." *Id.* § 273.5(d) (emphasis added); *see People v. Abrego*, 21 Cal. App. 4th 133, 138 (1993) ("[E]ven a minor injury [is] sufficient to satisfy the statutory definition."). Indeed, Respondent does not assert that Petitioner caused any serious bodily injury as a result of the alleged offenses. (*See generally* ECF No. 6.)

Additionally, the records provided by Respondent reflect that the charges discussed above were all dismissed or the prosecutor declined to press them, aside from the exhibiting firearm and Possession of Burglary Tools charges.[6] (ECF No. 6-1 at 4; ECF No. 6-2.) To the extent the government relies on dismissed charges or arrests which did not result in a charge, this raises significant due process concerns. As another court in the Eastern District noted, "[t]o avoid those concerns, courts have construed [8 U.S.C. § 1226(c)] to apply only where an individual is *currently* charged with or arrested for the enumerated crimes, and concluding mandatory detention is not required when charges are never filed . . . or where an individual has been acquitted." *Singh v. Chestnut*, No. 1:26-CV-00546-DJC-AC, 2026 WL 266021 at *2 (E.D. Cal. Feb. 2, 2026) (citing cases).

Thus, the Court concludes that 8 U.S.C. § 1226(c)(1)(E) does not govern Petitioner's detention. Rather, Petitioner's detention is governed by 8 U.S.C. § 1226(a). *See Guzman v. Andrews*, No. 1:25-CV-01015-KES-SKO, 2025 WL 2617256, at *3 (E.D. Cal. Sept. 9, 2025) (finding petitioner's detention governed by the general process for arresting and detaining noncitizens under 8 U.S.C. § 1226(a) where petitioner had been convicted under Cal. Penal Code

---

6 It is not clear whether Petitioner has been formally charged with Possession of Burglary Tools. The RAP sheet states that Petitioner was arrested for that offense (ECF No. 6-5 at 9) and Respondent's records state that Petitioner was scheduled for a court date in Los Angeles for Possession of Burglary Tools and "[c]arry loaded firearm in public." (ECF No. 6-1 at 4.) The latter appears to refer to Petitioner's arrest on November 12, 2025 for a violation of California Penal Code § 25850(a). (ECF No. 6-5 at 9.) As discussed above, the Possession of Burglary Tools charge does not implicate 8 U.S.C. § 1226(c)(1)(E). The carrying loaded firearm in public charge does not even arguably implicate that statute since it is neither an enumerated offense nor a crime involving "serious bodily injury or death." Additionally, the constitutionality of that statute has recently been called into question by the Ninth Circuit. *Baird v. Bonta*, 163 F.4th 723 (9th Cir.), *reh'g en banc granted, opinion vacated,* 172 F.4th 1105 (9th Cir. 2026).

§ 243(e)(1) for domestic battery); *Roa v. Albarran*, No. 25-CV-07802-RS, 2025 WL 2732923, at *1, 5 (N.D. Cal. Sept. 25, 2025) (same).

B. <u>Due Process Challenge</u>

Petitioner alleges that his detention without a hearing violates the Fifth Amendment's Due Process Clause. (ECF No. 1 at 6.) Respondent argues that Petitioner's detention without a bond hearing is constitutional. (ECF No. 6 at 3–5.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i) Liberty Interest*

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's specific conditional release rises to the level of a protected liberty

interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released by immigration authorities on April 7, 2018. (ECF No. 1 at 9.) Under *Morrissey*, this release was an implied promise that Petitioner would not be re-detained during the pendency of his immigration proceedings. As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner's criminal history does not alter the Court's conclusion. As discussed above, Petitioner is not subject to mandatory detention by reason of his criminal history. Petitioner has a liberty interest in his release from immigration detention protected by the Due Process Clause.

*ii) Procedures Required*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a

substantial private interest in remaining free from detention. Petitioner was released from immigration detention eight years ago, he has successfully applied for a U-Visa, and is lawfully pursuing asylum in this country. (ECF No. 1 at 9.) Despite this, Petitioner has been detained, separated from his fiancé and young son, for over two months without notice or an opportunity to be heard. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Doe*, 787 F. Supp. 3d at 1094 (finding similarly).

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here is considerable where Petitioner has received no procedural safeguards such as a bond or custody redetermination hearing. *See H.F. v. Albarran*, No. 1:25-CV-01795-TLN-EFB, 2025 WL 3691081, at *5 (E.D. Cal. Dec. 19, 2025) ("As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here to be considerable. . . . This is particularly so as Petitioner has already been released from incarceration twice: first from immigration detention on his own recognizance, and second from criminal detention. . . .")

As discussed above, the Court is not persuaded that 8 U.S.C. § 1226(c) justifies Petitioner's detention, and, indeed, it was not even cited as a justification for that detention in the Department of Homeland Security's administrative arrest warrant for Petitioner or the Notice of Custody Determination provided to Petitioner. (ECF Nos. 6-3, 6-4.) 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The statute provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. Petitioner requested such a hearing on the first day of his detention but did not receive one. (ECF No. 6-4.)

The Court therefore concludes that the risk that Petitioner is erroneously being deprived of liberty is considerable.

Finally, as to the third *Mathews* factor — government interest — the cost and time of procedural safeguards are minimal. Notice and custody determination hearings are routine processes for Respondent, and any delay in re-detention for time to provide a hearing would be minimal.

Upon consideration of the *Mathews* factors, the Court finds due process requires that Petitioner receive notice and a hearing before a neutral decisionmaker, at minimum. Petitioner has not received any such hearing in over two months of detention. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.)

1. Respondent must IMMEDIATELY RELEASE Petitioner Kevin C.R. (A# 216-273-886) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions. **Respondent must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2. Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where Respondent demonstrates by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is DENIED as moot.

**4. The Clerk of Court is directed to serve California City Detention Center with**

**a copy of this Order.**

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: August 25, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE